[Cite as *State v. Gray*, 2018-Ohio-4417.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106828**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**TERRELL GRAY**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615721-A

**BEFORE:** E.A. Gallagher, A.J., E.T. Gallagher, J., and Jones, Sr., J.

**RELEASED AND JOURNALIZED:** November 1, 2018

**ATTORNEY FOR APPELLANT**

Christopher M. Kelley
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Kevin R. Filiatraut
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant Terrell Gray appeals his convictions for murder, felonious assault and improper handling of a firearm in a motor vehicle in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm.

**Facts and Procedural History**

{¶2} On April 11, 2017 Gray was indicted on two counts of aggravated murder, four counts of murder, two counts of discharge of a firearm on or near prohibited premises, four counts of felonious assault and one count of improper handling of a firearm in a motor vehicle. All counts contained one, three and five-year firearm specifications. The case proceeded to a jury trial where the following facts were adduced.

{¶3} On March 25, 2017, Gray, Charles Walker and Cassius Williams stopped at a convenience store at the intersection of Woodland and Woodhill Avenues. Surveillance video

obtained from the store showed the three men arriving in a black Volkswagon Passat. Williams was in possession of a .40 caliber Glock handgun with a drum-style magazine capable of holding 50 rounds. Video from inside the store showed Williams holding the metallic drum while it protruded from his waistband.

{¶4} Video showed the men leaving the store with Walker driving, Williams seated in the front passenger seat and Gray in the right rear passenger seat behind Williams. The video shows that, as the Passat was leaving the store parking lot, a red Saturn Vue passed the store heading westbound on Woodland Avenue. The Vue was driven by Aevonte Gaddis and cousins A.J.[1] and Tywain Johnson were passengers in the vehicle. A.J. was sitting in the front passenger seat while Tywain was behind him in the rear passenger seat. The video showed the Passat pull out of the convenience store parking lot and begin to follow the Vue.

{¶5} Gaddis testified that he saw the Passat approaching from behind and a "drum" hanging out the window. He yelled for A.J and Tywain to "duck" before he heard more than 30 gunshots. The Vue was struck by gunfire from behind and on the driver's side of the vehicle as the Passat passed it on the left. The gunfire continued even after the Passat had passed the Vue and was driving in front of it. Tywain suffered three gunshot wounds to the head and was killed.

{¶6} David Wilder was driving a significant distance behind both vehicles at the time of the shooting and was struck in the head by a single errant shot fired backwards after the Passat had passed the Vue. Wilder died instantly.

---

[1]Juveniles are identified by their initials pursuant to this court's policy of non-disclosure of juvenile's identities.

{¶7} Gray was shot in his right hand during the incident. He was transported to St. Vincent Charity Hospital by Walker and Williams in the black Passat. A responding police officer found Walker and Williams at the hospital with Gray shortly after the shooting. A Beretta 9 millimeter firearm was recovered from Walker at the hospital.

{¶8} A single spent shell casing was recovered from the rear trunk lid of the Passat found parked at the hospital. The .40 caliber Glock with the drum magazine was found under the front passenger seat of the Passat. An Astra 9 millimeter firearm was also found under the front passenger seat, situated towards the rear of the seat. The defense stipulated at trial that Gray had purchased the Astra firearm the day before the shooting.

{¶9} Police recovered 36 semiautomatic shell casings in total. Forensic evidence revealed that 29 of those casings were fired by Williams' .40 caliber Glock and seven casings were fired by Gray's 9 millimeter Astra. No casings were found which could be attributed to any other firearm. No defects were found inside, or outside, the Passat to suggest that any shots were fired from the Vue towards the Passat. No firearms were recovered from the Vue or any of its passengers although gunshot residue was identified on Aevonte Gaddis and A.J. Due to his hospitalization, gunshot residue tests were not performed on the body of Tywain Johnson.

{¶10} After Gray received treatment for the gunshot wound to his hand, he was interviewed by a detective. Gray initially maintained that he had been shot during a robbery that occurred while he was walking down a nearby street. He denied any knowledge of the drive-by shooting and maintained that Walker and Williams appeared by happenstance and transported him to the hospital.

{¶11} When confronted by evidence that placed him with Walker and Williams at the convenience store just prior to the shooting, Gray admitted that he was in the right rear passenger

seat of the Passat during the incident. He alleged that Walker and Williams were firing shots at the Vue and he was an innocent passenger that was struck by gunfire coming from the Vue. However, Gray later stated during a recorded jailhouse phone call that he believed he was shot by Williams.

{¶12} The jury found Gray not guilty of the two counts of aggravated murder but guilty of all remaining counts. At sentencing, the trial court merged, as allied offenses, various offenses pertaining to the deaths of Wilder and Johnson. To this end, the four counts of murder, two counts of discharge of a firearm on or near prohibited premises and two counts of felonious assault were merged into one count of murder for each victim. For the murder charge pertaining to Wilder, the trial court imposed a prison term of 15 years to life to be served consecutive to the attached three year firearm specification. For the murder charge pertaining to T.J., the trial court imposed a prison term of 15 years to life to be served consecutive to both the three years for the firearm specification and the five years for the drive-by specification. For the two counts of felonious assault pertaining to Gaddis and A.J., the trial court imposed a prison term of seven years to be served consecutive to three years for the firearm specification on each count. The trial court imposed a one-year prison term on the count of improper handling of a firearm in a motor vehicle.

{¶13} The trial court ordered each of the three-year firearm specifications it had imposed to run consecutive to each other and consecutive to the single five-year firearm specification term. All of the remaining five-year firearm specifications merged into the single five-year firearm specification the trial court had ordered to be served. Lastly, the trial court ordered the imposed prison terms for both counts of murder and both counts of felonious assault to be served

consecutive to each other but concurrent with the prison term for improper handling of a firearm in a motor vehicle. Gray's cumulative sentence was 61 years to life.

**Law and Analysis**

**I. Manifest Weight**

{¶14} In his first assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.

{¶15} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence but nevertheless conclude that the judgment is against the weight of the evidence.

{¶16} In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id*., quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶17} Appellant argues that his convictions were against the manifest weight of the evidence because he lacked the requisite intent to aid and abet Williams in the driveby shooting.

{¶18} Under Ohio's complicity statute, R.C. 2923.03, "[n]o person acting     with the kind of culpability required for the commission of an offense, shall     * * * [a]id or abet

another in committing the offense; * * * ." R.C. 2923.03(A)(2). A person who is guilty of complicity in the commission of an offense "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).

{¶19} The complicity statute requires that an accomplice be treated as though he was the person who committed every act of the underlying principal offense. *State v. Kimble*, 7th Dist. Mahoning No. 06 MA 190, 2008-Ohio-1539, ¶ 27. "In other words, the court can impute the elements of the principal offense, committed by the principal, to the aider and abettor." *Id*., citing *State v. Jackson*, 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist.1993); *State v. Hurse*, 10th Dist. Franklin No. 14AP-687, 2015-Ohio-2656, ¶ 11.

{¶20} To support a conviction based upon a defendant's complicity by "aiding and abetting" another in committing an offense under R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. As this court explained in *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459:

> "In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 10 Ohio B. 65, 460 N.E.2d 672 (1983). 'The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). * * * A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001-Ohio- 1336, 754 N.E.2d 796. 'Such intent may be inferred from the circumstances surrounding the crime.' *Id*. at 246, 754 N.E.2d 796."

*Howard* at ¶ 23, quoting *State v. Langford*, 8th Dist. Cuyahoga No. 83301, 2004-Ohio-3733, ¶ 20-21.

{¶21} Aiding and abetting may be shown by direct or circumstantial evidence and a defendant's participation may be inferred from the defendant's presence, companionship and conduct before and after the offense is committed. *Howard* at *id.*, citing *Langford* at ¶ 21, citing *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981). A defendant may aid or abet another in the commission of an offense by his words, gestures, deeds or actions. *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 25.

{¶22} Gray's argument is premised on his assertion that he was "physically incapable of aiding and abetting Cassius [Williams], the principle offender" due to the gunshot wound he sustained to his dominant hand. Gray also notes that at the time it was recovered by police following the shooting, the Astra was found to have a malfunction that required the trigger to be manually manipulated back into the proper position after each shot it fired. Gray argues that with his injury he would have been unable to accomplish such manipulation.

{¶23} Gray's argument is not supported by the evidence in this case. Nearly overwhelming circumstantial evidence was admitted suggesting that Gray fired seven shots with the Astra out the right rear window of the Passat and his extended gun hand was struck by Williams' own gunfire from the front passenger window as the two men fired back towards the Vue while, or after, the Passat passed the Vue.

{¶24} First, it is undisputed that Gray purchased the Astra firearm the day before the incident and that the Astra was recovered from the floor of the Passat underneath the rear of the front passenger seat where it would commonly be deposited by the right rear passenger. Gray was seated in the right rear passenger seat. The right rear passenger window of the Passat is clearly seen to be fully raised when the Passat exits the convenience store parking lot just prior to the shooting. No damage to that window was found that would be consistent with Gray's

theory that he was a mere bystander unexpectedly shot in the hand by gunfire originating from the Vue. In fact, the only evidence that any gunshots could have been fired from the Vue was the fact that gunshot residue was found on the victims in that vehicle. The state's forensic expert explained that the gunshot residue on the Vue's passengers could have been deposited inside the Vue from the 36 shots fired from Williams' and Gray's firearms. Most telling, every single shell casing recovered from the scene was fired by those two firearms. No firearms were recovered from the Vue or its passengers and no firearm damage was found on the Passat.

{¶25} In contrast, the location of the various shell casings recovered from the scene was consistent with Gray's own stated belief that he was shot by Williams. Travelling westbound on Woodland Avenue, the first recovered shell casings were from Williams' .40 caliber Glock. The 9 millimeter shell casings fired by Gray's Astra were found in a relatively tight cluster near the end of the first half of the stretch of road in which the shooting occurred. Only Williams' .40 caliber shell casings were found in the remaining half of the shooting route. This evidence is consistent with Williams and Gray shooting at the Vue as they approached it from behind and as they passed the left side of the vehicle. Once the Passat passed the Vue and the two men continued firing, Williams' sharper angle in firing back towards the Vue would have placed Gray's gun hand, extended out the right rear window, in danger of being struck by a gunshot fired by Williams. The circumstantial evidence, as well as Gray's own statements in his jailhouse phone call, suggest that these circumstances led to Gray's compatriot shooting him in the hand. This explanation is supported by the shell casings recovered from the scene which indicated that Williams, alone, continued to fire well after Gray had ceased firing. It is also consistent with the fact that a stray bullet, fired by Williams after the Passat passed the Vue, travelled a significant distance eastward down Woodland and struck Wilder.

{¶26} Similarly, Gray's theory that Walker fired the Astra while he was driving the Passat lacks credibility. First, Walker had his own firearm and had no need to fire the Astra. Second, the Astra belonged to Gray and was found in a location consistent with Gray, in the right rear passenger seat, depositing it under the seat in front of him. Finally, no shell casings were found inside the Passat. This is inconsistent with Gray's claim that Walker was firing from inside the vehicle but consistent with the state's theory that Gray fired with his hand extended outside the vehicle before he was shot by Williams.

{¶27} Lastly, we find no merit in Gray's argument that he could not have fired the Astra due to his injury and the trigger malfunction. The state's firearm and tool mark examiner testified that the damage to the Astra's trigger could have been sustained as a result of the firearm being shot or dropped on the ground. Because it is undisputed that seven shots were fired from the Astra during the incident the credible circumstantial evidence suggests that the Astra's trigger was damaged when Williams shot Gray while Gray was firing at the Vue.

{¶28} The manifest weight of the evidence suggests that Gray aided and abetted Williams in the drive-by shooting of the Vue before his own friend incompetently shot his extended gun hand.

{¶29} Gray's first assignment of error is overruled.

## II. Sufficiency of the Evidence

{¶30} In his second assignment of error, appellant argues that the state failed to present sufficient evidence to support his convictions.

{¶31} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an

appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

**{¶32}** Gray argues that the state failed to introduce sufficient evidence to establish that he was complicit with Williams in the commission of the offenses for which he was convicted. Gray's arguments under this assignment of error are limited to incorporating the arguments presented in his first assignment of error and he reiterates his position that he was an uninvolved bystander in the events of the shooting. For the reasons set forth above, we find no merit to his arguments.

**{¶33}** Gray's second assignment of error is overruled.

**III. The Jury Instruction on Aiding and Abetting**

**{¶34}** In his third assignment of error, appellant argues that the trial court erred in providing the jury with an instruction as to complicity and aiding and abetting.

**{¶35}** A trial court has discretion to determine whether the evidence adduced at trial was sufficient to warrant an instruction. *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. We review the giving of a jury instruction for an abuse of discretion. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35.

{¶36} Gray again reiterates the arguments addressed in the first assignment of error in favor of his assertion that a jury instruction on aiding and abetting was improper in this instance because the record lacked sufficient evidence of his complicity in the shooting. For the reasons addressed in Gray's first assignment of error we cannot say that the trial court abused its discretion in this instance.

{¶37} Gray's third assignment of error is overruled.

**IV. Ineffective Assistance of Counsel**

{¶38} In his fourth assignment of error, Gray argues that his trial counsel was ineffective for failing to retain an expert witness to rebut the testimony of the state's trace evidence expert witness regarding the potential transfer of gunshot residue from the firearms shot by Williams and Gray into the interior of the Vue and onto its occupants.

{¶39} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶40} Gray has not established that his counsel's failure to introduce a rebuttal expert witness fell below an objective standard of reasonable representation. First, the Ohio Supreme Court has held that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 66, citing *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993), citing *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987). The argument that a defense expert was necessary to impeach the testimony of the state's experts can be considered "purely speculative" where there is no indication in the record as to the identity of

the expert who should have been called or what their testimony would have been. *Hunter* at ¶ 66.

{¶41} As in *Hunter*, Gray's argument that his attorney should have presented an expert to testify in rebuttal against the state's trace evidence expert is purely speculative.

{¶42} Gray's fourth assignment of error is overruled.

**V. Consecutive Sentences**

{¶43} In his fifth assignment of error, Gray argues that the trial court erred in imposing consecutive sentences. Gray concedes that the trial court made the required findings under R.C. 2929.14(C)(4) to impose consecutive sentences, but maintains that the record does not support those findings.

{¶44} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. Cuyahoga No. 97579, 2012-Ohio-2508, ¶ 6, citing *State v. Hites*, 3rd Dist. Hardin No. 6-11-07, 2012-Ohio-1892. R.C. 2953.08(G)(2) provides that our review of consecutive sentences is not an abuse of discretion. Instead, an appellate court must "review the record, including the findings underlying the sentence . . ." *Id*. If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id*.

{¶45} R.C. 2929.14(C)(4) provides that, in order to impose consecutive sentences, the trial court must find (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the

seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense;

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct;

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶46} Gray argues that consecutive sentences were inappropriate because he had no criminal history and was convicted under a theory of complicity. We find no merit to his argument. The record reflects that the trial court carefully considered all arguments presented by Gray's trial counsel at sentencing including the fact that Gray had no criminal history. Although he seeks to minimize his culpability as mere complicity, the evidence at trial established that he was a full participant in the drive-by shooting that resulted in the deaths of a 15 year old boy and a person who was an innocent bystander. Gray's actions demonstrated that he posed an intolerable threat to society and the trial court's imposition of consecutive sentences were supported by the record.

{¶47} Gray's fifth assignment of error is overruled.

**{¶48}** The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
LARRY A. JONES, SR., J., CONCUR